# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT BARKMAN,<br><br>Defendant. | Case No. 3:19-cr-0052-RCJ-WGC<br><br>**ORDER GRANTING EMERGENCY MOTION TO TEMPORARILY MODIFY INTERMITTENT CONFINEMENT AS A CONDITION OF PROBATION DUE TO THE COVID-19 PANDEMIC** |

## Introduction

Mr. Barkman moves this Court for an order temporarily modifying his conditions of probation by suspending for a minimum of 30 days the requirement that he present himself to the Washoe County Detention Facility for intermittent confinement given the COVID-19 pandemic.

COVID-19 is a dangerous illness spreading rapidly across the country and through Northern Nevada. The CDC has issued guidance that individuals at higher risk of contracting severe forms COVID-19—adults over 60 years old and

people with chronic medical conditions—take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[1] As of a few hours ago, the White House announced that the COVID-19 crisis could last until July and that gatherings over 10 people should be avoided.[2]

With confirmed cases that indicate community spread, the time is now to take action to protect vulnerable populations and the community at large. To date, protective measures have been taken in Washoe County, Nevada to slow the spread of the virus, including indefinitely cancelling all events with an expected attendance of 250 or more people. The following is a sample of events that have been cancelled in Nevada: (1) K-12 schooling; (2) All school, district and non-district sponsored athletics, extra-curricular activities, assemblies, practices, proms and events; (3) all district sponsored travel; (4) all previously scheduled spring break childcare related camps; (5) UNR is moving to online classes starting on March 23, 2020.

With 26 confirmed cases in Nevada, indicating community spread, we must take every necessary action to protect vulnerable populations and the community at large. The men and women incarcerated at Washoe County

---

[1] *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* https://bit.ly/2vgUt1P.

[2] *Trump Says Criss Could Last Until July, Recommends No Gathering Ofer 10 People* (March 16, 2020) *at* https://www.forbes.com/sites/rachelsandler/2020/03/16/cdc-all-americans-should-avoid-gathering-in-groups-of-more-than-10-people/#5f9fd51a283d.

2

Detention Facility are a part of our community and all reasonable measures must be taken to protect their health and safety.

**1. Conditions of Confinement and Spread of Coronavirus**

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[3] Inmates cycle in and out of detention facilities from all over the world and country, and people who work in the facilities including correctional officers, and care and service providers leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited.[4] Many people who are incarcerated also have chronic conditions, like diabetes, asthma, high blood pressure, hepatitis, or HIV, which makes them vulnerable to severe forms of COVID-19.

According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" because "infection control is challenging in these settings."[5] Outbreaks of the flu regularly occur in

---

[3] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

[4] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[5] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[6]

In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[7] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[8] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[9] In the U.S., steps are already being taken in some jurisdictions to facilitate the release of elderly and sick prisoners and to reduce jail populations by discouraging the refusing the admission of individuals arrested on non-violent misdemeanor charges.[10]

---

[6] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

[7] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

[8] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

[9] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

[10] In New York Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners (Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) *at* https://theappeal.org/sentenced-to-covid-19/.); Cuyahoga County (Ohio) is holding mass pleas and bail hearings to reduce the current jail population (https://www.cleveland.com/court-justice/2020/03/cuyahoga-county-officials-will-hold-mass-plea-hearings-to-reduce-jail-population-over-coronavirus-concerns.html); Mahoning County (Ohio) jail is

4

Faced with the threat, jails and prisons have to prepare for two states: Before COVID-19 gets into the facility and the jail is trying to keep the virus out When the disease is discovered inside the facility and efforts then are made to keep the virus in. There is ample opportunity for a virus to enter a prison or jail, and for it to go back out into the community. Once a contagious illness enters, conditions in correctional facilities are highly conducive to it spreading. This pandemic is unprecedented in our lifetime. While measures are being taken by facilities all over the world, no facility is prepared.

Screening inmates is important. Current guidelines do not go far enough given the catastrophic consequences of missing a single case. Moreover, it is statistically far more likely that someone else, not an inmate, will be the initial carrier of COVID-19 into a jail. New inmates are brought to jail by an arresting officer or two every day. The jail is also visited by lawyers, probation and parole officers, volunteers (who put on church services and educational programs), and many more. By sheer numbers alone, these people present a bigger threat than inmates. These people are also more likely to have recently traveled out of the country than the average inmate. Tests are still, as of this writing, hard to come by. The question is not if there will be a COVID-19 outbreak at the jail. It is when.

---

refusing all non-violent misdemeanor arrestees (https://www.wkbn.com/news/coronavirus/mahoning-county-jail-refusing-some-inmates-due-to-coronavirus-outbreak/); see also Collin County (TX) (https://www.dallasnews.com/news/public-health/2020/03/12/facing-coronavirus-concerns-collin-county-sheriff-asks-police-not-to-bring-petty-criminals-to-jail/).

5

## 2. Specific Conditions at the Washoe County Detention Facility

The Washoe County Detention Facility houses people in small cells with beds close to the other, which prevents detainees from engaging in social distancing and self-quarantine precautions as recommended by the CDC. Those detained at the Washoe County Detention Facility also share limited toilets, sinks and showers with the other people in their housing unit, which creates a greater risk to exposure to the virus. There are also significant restrictions on movement, so people are held together in close quarters at all times.

The Washoe County Detention Facility also has limited access to personal hygiene items such as tissues, soap, disinfectant, or hot water, which prevent individuals from taking recommended precautions to minimize the spread of the virus. Moreover, if people cannot afford to buy personal hygiene products then their ability to maintain proper hygiene is even more limited.

There are also significant limitations on the detention facility's medical services. The detention facility does not have a hospital unit on-site, medical staffing in general is limited, and the Renown tent will quickly become overwhelmed if an outbreak occurs at the detention facility. It is unknown if the Washoe County Detention Facility possesses a single ventilator.

Washoe County Detention Facility has made the following policy adjustments to address COVID-19, Exhibit A. Unsurprisingly, given the unprecedented scope of this pandemic, many questions are still without answers.

- How will all people in the facility — incarcerated people, staff, and visitors — be educated so they can understand the risks, protect themselves, and protect others?
- Under what circumstances will staff and people incarcerated in the facilities be tested for the virus? How many tests are needed?
- If people who are incarcerated require quarantine and/or treatment, how will that be accomplished? Can it be accomplished in a humane way and within Constitutional parameters?
- If medical staff must be quarantined or become ill, how will the facility monitor, quarantine and treat the prison or jail population?
- If correctional staff must be quarantined or become ill, how will the facility operate, both in terms of addressing the virus and in terms of simply maintaining necessary services, safety, and security?
- If incarcerated people must be quarantined or become ill, how will the facility continue necessary operations that are reliant on the prison or jail population, such as food preparation?
- How are particularly vulnerable populations, such as the elderly, or immunocompromised, being protected?
- How will the facility meet the challenges of COVID-19 without violating the rights of the people in its custody?

The Washoe County Detention Facility simply lacks the resources necessary to engage in aggressive screening and testing of inmates, correctional staff, law enforcement officers and other care and service providers who enter the facility. The limitations mean the Washoe County Detention Facility is not screening people as they are being brought into the detention facility by first segregating them, testing them for the virus, questioning them about community exposure and travel, and then monitoring their temperature for a period of 14 days before admitting them into the general population.

As new arrestees arrive, if they are not symptomatic or have knowingly been exposed, they will be brought into the Washoe County Detention Facility and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions. Given the rapid community spread of this virus, variability in symptoms and the likelihood of it being spread before a patient is symptomatic, these measures are inadequate.

**Argument**

**1. 18 U.S.C. § 3563.**

Under 18 U.S.C. § 3563, "[t]he court may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation."

Earlier this year, the Court sentenced Mr. Barkman to one year of

probation and sixty days of intermittent confinement to be served for two consecutive days (Tuesday and Wednesday) at a designated facility beginning on February 11, 2020. ECF No. 17. Since Mr. Barkman, the spread of COVID-19 has reached pandemic proportions. Mr. Barkman not only potentially risks exposing the general inmate population of the Washoe County Detention Facility to the disease, but also risks becoming exposed himself.

The circumstances that existed when Mr. Barkman was sentenced to probation with intermittent confinement as a condition have now changed. There is a pandemic that poses a direct risk that is far greater if Mr. Barkman appears is admitted to the inmate population of the Washoe County Detention Facility. The risk runs in two directions—to Mr. Barkman, and to the institution. In considering the "total harm and benefits to prisoner and society"[11] of continuing to intermittent confinement as normal against the heightened health risks posed to Mr. Barkman and the Washoe County Detention Facility, temporarily suspending Mr. Barkman's intermittent confinement would appear to satisfy the interests of everyone during this rapidly encroaching pandemic.

---

[11] *See Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case").

**2. Emergency relief.**

Mr. Barkman is scheduled to surrender at the jail tomorrow at or around 9:00 a.m. to begin two consecutive days of intermittent confinement. Accordingly, Mr. Barkman seeks this Court's immediate intervention in modifying his conditions of probation by suspending for a minimum of 30 days the intermittent confinement requirement in light of the COVID-19 public health crisis. Counsel for Mr. Barkman has conferred with the prosecuting attorney for the government before filing this motion. The government has no objection to temporarily suspending for 30 days the condition requiring Mr. Barkman's intermittent confinement. Should the Court grant this motion, counsel will seek to be heard regarding any extension of relief before expiration of the 30-day suspension sought herein.

## ORDER

IT IS HEREBY ORDERED that the Emergency Motion To Temporarily Modify Intermittent Confinement as a Condition of Probation Due to the COVID-19 Pandemic (ECF No. 20) is GRANTED.

IT IS FURTHER ORDERED that given the COVID-19 pandemic, Mr. Barkman's condition of probation that he present himself to the Washoe County Detention Facility for intermittent confinement is SUSPENDED for 30 days from entry of this Order.

IT IS SO ORDERED this 17th day of March, 2020.

_____
ROBERT C. JONES